

FILED
2012 Jun-19 AM 10:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **DERRICK ELLINGTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **6:11-cv-00940-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Derrick Ellington ("Ellington") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Ellington filed his application for Title II Disability Insurance Benefits on May 31, 2007, alleging a disability onset date of September 29, 2006. (R. 52).

After the SSA denied his application, Ellington requested and received a hearing

on August 18, 2009, (R. 23-51).  At the time of the hearing, Ellington was 46 years

old with a high school diploma and a vocational license as a barber.  (R. 27).

Ellington has not engaged in substantial gainful activity since September 29, 2006.

(R. 120).  His past relevant work included work as a senior field artillery sergeant

in the United States Army.  (R. 28, 45-46).

On September 25, 2009, the ALJ denied Ellington's claims. (R. 8-22).  The

ALJ found that Ellington has lumbar disc disease and degenerative joint disease of

the left knee and ankle (R. 13), that Ellingon cannot perform any past relevant

work, but has a residual functional capacity ("RFC") to perform light work.  (R.

15).  On January 12, 2011, the Appeals Council refused to grant review.  (R. 1-5).

Ellington then filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ properly

developed the record.  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the

Commissioner's "factual findings are conclusive if supported by 'substantial

evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district

court may not reconsider the facts, reevaluate the evidence, or substitute its

judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Ellington alleges disability because of pain, he must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of

pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th

Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added). Moreover, "[a] claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is itself

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if

a claimant testifies to disabling pain and satisfies the three part pain standard, the

ALJ must find him disabled unless the ALJ properly discredits his testimony.

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the

ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either

fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if

the ALJ's reasons are not supported by substantial evidence, the court must accept

as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV.  The ALJ's Decision

Turning now to the ALJ's decision, the court notes that, initially, the ALJ

determined that Ellington has not engaged in substantial gainful activity since

September 29, 2006, and therefore met Step One of the five step analysis. (R. 13).

The ALJ acknowledged that Ellington's combination of severe impairments of

lumbar disc disease and degenerative joint disease of the left knee and ankle met

Step Two. *Id*.  The ALJ proceeded to the next step and found that Ellington did

not satisfy Step Three since his impairments or combination thereof neither met

nor equaled the requirements for any listed impairment. (R. 15). Although she

answered Step Three in the negative, consistent with the law, *see McDaniel*, 800

F.2d at 1030, the ALJ proceeded to Step Four where she determined that Ellington

had the RFC to

> to perform light work . . . such that [Ellington] may sit six hours in an
> eight hour workday with appropriate breaks; may stand/walk six
> hours of an eight hour workday with appropriate breaks; may
> lift/carry ten pounds frequently and twenty pounds occasionally; but
> is precluded from the use of ladders/ropes/scaffolds; may only
> occasionally stoop, kneel, crouch and crawl; must avoid concentrated
> exposure to extreme heat or cold; must avoid concentrated exposure
> to vibration and workplace hazards such as unprotected heights and
> dangerous machinery.

(R. 15).  Further, the ALJ held that Ellington could not perform any of his past

relevant work.  (R. 20).  Lastly, in Step Five, the ALJ considered Ellington's age,

education, work experience, RFC, and impairments, and determined that there are

a significant number of jobs in the national economy that Ellington can perform.

(R. 20-21).  Specifically, Ellington can perform the job of a gate guard, merchant

patrolman, and a property manager.  (R. 21).  Because the ALJ answered Step Five

in the negative, the ALJ determined that Ellington is not disabled.  (R. 23); *see*

*also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

The court turns now to Ellington's contentions that the ALJ made a

determination that is not based on substantial evidence and failed to adequately

develop the record.  The court addresses each contention below.

### A. The ALJ's Finding Denying Disability is Based on Substantial Evidence

#### 1. "Very Frequent Breaks" v. "Appropriate Breaks"

Ellington's first contention of error is related to the weight the ALJ assigned to various findings of Dr. Trina McKenzie.  Specifically, Ellington claims the "ALJ opined that she was going to accord great weight to the opinion of the DDS consultative examiner Dr. Trina McKenzie . . . [but] the ALJ accorded great weight to a physician opinion that supported disability and still found Plaintiff not disabled which is contradictory in itself."  Doc. 8 at 11.  As it relates to Dr. McKenzie, she performed an assessment on July 26, 2007, in which she found that Ellington "presents for disability for degenerative joint disease in his back and disc disease as diagnosed by MRI . . . . Although [Ellington] can still do some physical activities, he does require very frequent breaks and has difficulty bending, stooping, kneeling, and crouching."  (R. 338).  Ellington contends that this finding supports his contention that he is disabled and, as such, takes issue with the ALJ's interpretation of Dr. McKenzie's findings.

Contrary to Ellington's contention, it is clear the ALJ reviewed Dr. McKenzie's findings sufficiently.  Indeed, the ALJ acknowledged that Dr. McKenzie found that Ellington "would require frequent breaks and had some limitations on bending, stooping, kneeling and crouching."  (R. 18).  However, the ALJ noted that Dr. McKenzie "did not render the opinion that [Ellington] is

disabled." (R. 18). Moreover, the ALJ's review found Dr. McKenzie's "evaluation to be persuasive and consistent with the determined medical findings," and therefore assigned the medical opinion great weight. *Id*. Critically, the ALJ acknowledged the limited postural abilities referenced by Dr. McKenzie when assigning the RFC. *Id.* Consequently, in Ellington's RFC, the ALJ specifically stated that Ellington "may only occasionally stoop, kneel, crouch and crawl . . . ." (R. 15). As it relates to this appeal, the ALJ did not include Dr. McKenzie's finding of "very frequent breaks." (R. 15). Rather, the ALJ found that Ellington has the RFC "to perform light work . . . such that [Ellington] may sit six hours in an eight hour workday with *appropriate breaks*; [and] may stand/walk six hours of an eight hour workday with *appropriate breaks* . . . ." (R. 15) (emphasis added).

Ellington asserts that the ALJ erred when she rejected Dr. McKenzie's "very frequent breaks," especially in light of the ALJ's assertion that she awarded great weight to Dr. McKenzie's opinion. The court disagrees. Ellington's contention of error ignores that the regulations make clear that the responsibility for assessing the RFC falls on the ALJ. 20 C.F.R. § 416.946. For example, while Ellington asserts that Dr. McKenzie's assessment supported disability, the regulations state unequivocally that "[a] statement by a medical source that [Ellington is] 'disabled' or 'unable to work' does not mean that [the ALJ must] determine that [he is]

disabled." 20 C.F.R § 404.1527(d)(1).  Therefore, assigning "great weight" to Dr.

McKenzie's opinion while also excluding Dr. McKenzie's opinion that Ellington

required "very frequent breaks" is not inconsistent or evidence of error.  After all,

in determining whether a claimant is disabled, the ALJ "will always consider the

medical opinions in [the] case record together with the rest of the relevant

evidence [she] received."  20 C.F.R. 404.15279(b).  Moreover, "the ALJ may

reject any medical opinion if the evidence supports a contrary finding." *Sharfarz*

*v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

In that respect, the court notes that Dr. McKenzie's findings do not support

Ellington's disability claim.  For example, Dr. McKenzie noted that Ellington

occasionally walks with a cane and at times has to wear an ankle and knee brace

for support.  (R. 337).  Moreover, she stated that "[Ellington] does require very

frequent breaks and has difficulty bending stooping, kneeling, and crouching." (R.

338).  However, Dr. McKenzie noted also that Ellington does not require

assistance dressing, has an intact range of motion, 5/5 strength, no sensory loss, sat

comfortably on the edge of the exam table in no acute distress, and that Ellington's

joints revealed no evidence of erythema, warmth, or tenderness.  (R. 18, 337).

She noted further Ellington's report that he controlled his pain with medications

and that "although he has constant pain, the pain medications do take the pain to a

5/10 from a 10/10 off his medications." (R. 338). Indeed, Ellington reported that he is able to stand and sit and that he can lift and carry items as long as they are not heavy weights and can take frequent breaks. (R. 338). Critically, as the ALJ pointed out, Dr. McKenzie never opined that Ellington is disabled. (R. 334-38).

Notably, Ellington overlooks also that Dr. McKenzie never placed direct limitations on what activities Ellington can perform. Instead, Dr. McKenzie stated only that Ellington has limitations in terms of bending, stooping, crouching, kneeling, standing, sitting, lifting, and carrying items due to pain and that Ellington needed to take very frequent breaks to minimize his pain while engaging in these activities. (R. 337-38). Conversely, unlike Dr. McKenzie, the ALJ restricted Ellington to light work, limited his sitting and standing to six hours in an eight hour work day, precluded him from using ladders/ropes/scaffolds, and limited Ellington to occasionally stooping, kneeling, crouching, and crawling. (R. 15). Consequently, in this context in which the ALJ placed limitations on Ellington to help minimize Ellington's pain, the ALJ then stated that Ellington only needed "appropriate breaks." In other words, the ALJ's opinion is consistent with Dr. McKenzie's assessment in that the ALJ placed more limitations on Ellington's activities to minimize the need for Ellington to take "very frequent breaks."

## 2. ALJ's Hypothetical to the Vocational Expert ("VE")

Next, Ellington contends that the ALJ erred because she "did not ask the [VE] a question based upon Dr. McKenzie's statement that [Ellington] needed very frequent breaks . . . ." Doc. 8 at 11. The ALJ asked the VE to consider an individual:

> age 46, with a high school education, and work of a skilled nature such as that of [Ellington] that he obtained in the military . . . . [T]he hypothetical individual would be capable of sitting for six hours in an eight-hour day with appropriate breaks, standing and walking for six hours in an eight-hour day with *appropriate breaks* . . . . could lift and carry 10 pounds frequently and 20 pounds occasionally . . . . could never climb ropes, ladders, or scaffolds; could occasionally crouch, crawl, stoop, and kneel . . . . should avoid concentrated exposure to extreme cold, heat, vibration, and hazards such as moving machinery or unprotected heights.

(R. 46-47) (emphasis added). While Ellington is correct that the hypothetical made no reference to "very frequent breaks," Ellington overlooks that the ALJ had no need to make the inquiry because the ALJ placed limitations on the RFC that rendered moot Ellington's need for frequent breaks. Stated differently, "[t]he ALJ was not required to include [Dr. McKenzie's] findings in the hypothetical that the ALJ properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec'y*, 363 F.3d 1155, 1161 (11th Cir. 2004). In other words, the ALJ committed no error in failing to include "very frequent breaks" in her hypothetical to the VE.

### 3. __Dr. Elliot Rampulla's Opinion__

Ellington contends next that the ALJ's "failure to accord great weight to the opinion of Dr. Elliot Rampulla [("Dr. Rampulla")], long term treating physician, despite the fact that the ALJ also claims to have accorded great [weight] to Dr. Rampulla's opinion was reversible error." Doc. 8 at 11.  Specifically, Ellington maintains that the "ALJ took part of Dr. Rampulla's opinion and accepted it and then ignored the rest." *Id*. at 12.  Indeed, the ALJ gave great weight to Dr. Rampulla's opinion that Ellington does not have a medical condition that is consistent with the level of pain Ellington reports experiencing.  (R. 18, 377). However, the ALJ gave less weight to the remainder of Dr. Rampulla's opinion that Ellington can only occasionally or less frequently lift ten pounds, sit three hours in an eight hour work day, and stand and walk a combined one hour in an eight hour work day, finding that these findings were not supported by Dr. Rampulla's records.  (R. 375)*.*  Ellington disagrees and alleges that his reports to Dr. Rampulla that he is unable to work because of back, ankle and knee pain, headaches, that he experiences pain constantly, with the worst in his back, which "generates down through [his] leg, [his] left leg, mostly . . . ," and other ailments, (R. 30-33), support Dr. Rampulla's restrictions.

While the court is certain that Ellington suffers from pain, Ellington's

descriptions of his pain, however, do not justify the portion of Dr. Rampulla's opinion that the ALJ rejected.  The court recognizes that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Moreover, "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  Here, good cause existed for the ALJ to reject Dr. Rampulla's findings.  Significantly, the ALJ provided the required reasons for rejecting a portion of Dr. Rampulla's opinion.

In that regard, a review of the medical record shows that Ellington began visiting Dr. Rampulla monthly in 2007.  (R. 378-487, 597-660).  On September 24, 2007, Dr. Rampulla completed a Physical Capacities Evaluation and a Clinical Assessment of Pain and opined that Ellington can occasionally or less frequently lift ten pounds; can sit three hours in an eight hour work day; can stand and walk a combined one hour in an eight hour work day; does not require an assistive device to ambulate even minimally in a normal workday; cannot climb stairs, ladders, do

fine manipulations, or work around hazardous machinery; and can occasionally bend, stoop, and reach.  (R. 375).  Dr. Rampulla further opined that Ellington's pain is distracting to adequate performance of daily activities or work; that walking, standing, bending, stooping, and moving of extremities greatly increase pain to cause distraction from tasks or total abandonment of tasks; and the side effects of Ellington's prescription medication are severe and limit effectiveness due to distraction, inattention, and drowsiness.  (R. 376-77).  Critically, Dr. Rampulla selected "No" to the question: "Does this patient have an underlying medical condition consistent with the pain he or she experiences?" (R. 377). While Ellington obviously disagrees, Dr. Rampulla's finding that Ellington does not have an underlying condition supports the ALJ's decision to reject Dr. Rampulla's opinion that Ellington can only occasionally or less frequently lift ten pounds, sit three hours in an eight hour work day, and stand and walk a combined one hour in an eight hour work day.  (R. 375).

Moreover, as the ALJ noted, Dr. Rampulla saw Ellington on a monthly basis spanning from 2007 to 2009 and during each visit Ellington completed a questionnaire.  (R. 17, 233-36, 240-43, 268-83, 382-85, 389-92, 402-05, 409-12, 415-18, 421-24, 432-35, 439-44, 447-50,453-56, 459-62, 466-67, 472-75, 484-87, 597-660, 661-662).  Significantly, the ALJ pointed out that "Dr. Rampulla

performed no diagnostic procedures, there are no exam notes for many of the visits, and although he opines that [Ellington] does not have a medical condition which is consistent with the level of pain he reports, he continues to prescribe oxycontin as [Ellington] continues to report pain." (R. 17). Based on the lack of exam notes and Dr. Rampulla's own assessment that Plaintiff has no medical condition that is consistent with Plaintiff's pain reports, the ALJ concluded that Dr. Rampulla relied primarily on Ellington's own questionnaires and the past medical history Ellington reported when he performed the Physical Capacities Evaluation and Clinical Assessment of Pain. In other words, Dr. Rampulla failed to bolster his opinion by sufficient medical evidence. As such, the ALJ did not have to give that portion of Dr. Rampulla's opinion great weight and, instead, can rely on other medical evidence to support her RFC finding.

### a. Other Medical Evidence

In that regard, in reaching her decision that Ellington is not disabled, the ALJ relied on the medical findings of multiple physicians. First, the ALJ referenced Ellington's long treatment history with Dr. William Hall ("Dr. Hall") of the Veteran's Administration Hospital. (R. 284-306, 307-333, 366-373). The record shows that during a visit on February 23, 2006, Dr. Hall noted that while Ellington has chronic back and knee pain and problems with his left ankle, his

exam was unremarkable.  (R. 291).   During another visit on October 16, 2006, Dr.

Hall found no real change in Ellington's musculoskeletal system despite noting

that Ellington had severe arthritis, degenerative joint disease involving his knees

and ankles, and chronic low back and shoulder pain.  (R. 286).  A few months

later, on February 7, 2007, Ellington visited Dr. Hall again complaining of chronic

back and leg pain. (R. 310). After performing a physical exam, Dr. Hall instructed

Ellington to continue taking OxyContin, Soma, and Xanax and to return for

another visit as necessary.  *Id.*  Based on Dr. Hall's records, although the ALJ

noted that Ellington continued to "complain of back and ankle pain, and receive[d]

regular prescriptions for oxycotin," (R. 16), the ALJ pointed out that Dr. Hall's

"diagnosis contained in the[] records [was] vague, reference[d] the patient's oral

history, and ha[d] no current findings to support it."  *Id.*

Second, the ALJ also referenced Dr. McKenzie's opinion and Dr. Dan

Lowery's ("Dr. Lowery") July 2007 psychological consultative examination, (R.

18), which stated that Ellington "walked without a gross motor impairment or

without any overt pain behaviors to and from the interview . . . He demonstrated

no obvious pain behaviors during the interview other than stretching his right leg

at times," (R. 340).  Moreover, Dr. Lowery stated that Ellington appeared to cope

with his chronic pain adequately and recommended a behavioral pain management

program.  (R. 342).  Finally, the ALJ also relied on the physical summary

completed by the state agency physician Dr. Keith Langford ("Dr. Langford") on

August 9, 2007, which provided that Ellington is capable of performing light work

by occasionally lifting 20 pounds, frequently lifting 10 pounds, standing and/or

walking about 6 hours in an 8-hour workday, frequently climbing ramps/stairs, but

can never climbing ladders/ropes/scaffolds.  (R. 358-65).

 In addition to reviewing the medical evidence, the ALJ also considered

Ellington's daily activities and found that they are inconsistent with the disability

contention.  As the ALJ pointed out, Ellington reported that he likes sitting on the

front porch, watching television and fishing, and that he drives around the

community or to the store, visits family, pays the household bills, and leaves the

house almost daily.  (R. 42-44).  To help alleviate the pain caused by these

activities, Ellington occasionally uses his cane when walking a few hundred feet to

visit his in-laws and takes OxyContin for pain, Xanax for anxiety, and Soma as a

muscle relaxer.  (R. 34-36).  Based on Ellington's own contentions of daily

activities, the ALJ concluded that Ellington is functioning despite his alleged pain.

### b. Medication Side Effects

 Ellington contends next that the ALJ erred because she did not consider Dr.

Rampulla's finding that Ellington suffers from disabling medical side effects.

Doc. 8 at 12.  However, Ellington's overlooks that Dr. Rampulla never stated that Ellington's medical side effects are disabling.  In fact, although in describing the medications effect on Ellington Dr. Rampulla selected the option that stated "[d]rug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc.," Dr. Rampulla failed to select the option that stated, "Patient will be totally restricted and thus unable to function at a productive level of work."  (R. 377).  The court has to assume that Dr. Rampulla, who has treated Ellington since 2007, would have selected the disabling option if he thought Ellington's medications qualified for such a finding.  Moreover, Ellington's contention misses the mark because the ALJ did not disregard Dr. Rampulla's opinion about the side-effects.  In fact, she specifically stated "the reported side effects of the medications taken by [Ellington] are noted.  I have take these factors into considerations when formulating the [RFC] capacity assigned herein.  Specifically, although not exclusively, due to possible side effects of the drugs I have reduced the exertional level of the work of which [Ellington] is capable and have restricted exposure to workplace hazards."  (R. 19).  In other words, contrary to Ellington's contention, the ALJ considered the side effects of Ellington's medication when assigning the RFC is incorrect.

     While Ellington obviously disagrees with the ALJ's findings, substantial

evidence supports the ALJ's decision to give great weight to Dr. Rampula's

opinion that Ellington does not have an underlying medical condition that is

consistent with the pain he alleged and to reject the rest of Dr. Rampulla's

findings.  Moreover, the ALJ provided reasons for rejecting Ellington's pain

testimony.  As such, the ALJ committed no error and the court must affirm the

decisions.

### B. The ALJ Adequately Developed the Record

Finally, Ellington alleges that "the ALJ failed in her duty to develop the

record by ignoring statements from two doctors to whom she appears to accord

great weight."  Doc. 8 at 14.  Allegedly, the ALJ overlooked and misinterpreted

the medical records of Dr. McKenzie and Dr. Rampulla.  *Id.* at 14-15.  The law is

clear that "[t]he ALJ has a basic obligation to develop a full and fair record;"

however, "there must be a showing of prejudice before it is found that the

claimant's right to due process has been violated to such a degree that the case

must be remanded to the Secretary for further development of the record."

*Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997).  For the reasons stated

in Section A, *supra*, the court finds that the ALJ reviewed and utilized the

extensive medical records to make her RFC determination and to determine the

weight to give the medical opinions of Drs. McKenzie and Rampulla.

Accordingly, Ellington failed to make the requisite prejudice showing necessary to warrant a reversal.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Ellington is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  The final decision of the Commissioner is, therefore, **AFFIRMED**.  A separate order in accordance with this memorandum of decision will be entered.

**Done** the 19th day of June, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE